# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

# FILED

JUL 2 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Antoine Jones )
241 912 )
1901 D St SE )
WDC 20003 )

(Enter your full name, prison number
and address)

v.

Detective Norma Horne )
S.A. Kelli OBrien )
Ms Maria Delaney-Abra )
Renaida Shaw )

(Enter the full name and address(es),
if known, of defendant(s) in this
action)

Case: 1:07-cv-01300
Assigned To : Leon, Richard J.
Assign. Date : 07/23/2007
Description: PRO SE GEN. CIVIL

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

### Instructions for filing a Complaint by a Prisoner
### Under the Civil Rights Act 42 U.S.C. §1983

This packet contains one copy of a complaint form and one copy of an application to proceed *in forma pauperis.* To start an action, you must file an original and one copy of this complaint form.

Your complaint must be clearly handwritten or typewritten and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space to answer a question, you may use another blank page.

Your complaint can be brought in this Court only if one or more of the named defendants is located within the District of Columbia. Further, you must file a separate complaint for each claim that you have unless they are related to the same incident or problem. The law requires that you state only facts in your complaint.

You must supply a certified copy of your prison trust account, pursuant to the provisions of 28 U.S.C. §1915, effective April 26, 1996. The filing fee is $150.00.. If insufficient funds exist in your prison account at the time of filing your complaint, the court must assess, and when funds exist, collect an initial filing fee equal to 20 percent of the greater of:

    (1)    the average monthly deposits to your prison account, or
    (2)    the average monthly balance of your prison account for the prior six-month period.

# RECEIVED

JUL 0 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Thereafter, you are required to make monthly payments of 20% of the preceding month's income. The agency having custody over you must forward payments from your account to the clerk of the court each time the amount in the account exceeds $10.00 until the filing fees are paid.

Therefore, before an assessment can be made regarding your ability to pay, you <u>must</u> submit a certified copy of your prison account for the prior six-month period.

When this form is completed, mail it and the copies to the Clerk of United States District Court for the District of Columbia, 333 Constitution Ave., NW, Washington, D.C. 20001.

I.   **SUCCESSIVE CLAIMS**

Pursuant to the Prison Litigation Reform Act of 1995, unless a prisoner claims to be in "imminent danger of serious physical injury," he or she may not file a civil action or pursue a civil appeal *in forma pauperis* "if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or they failed to state a claim upon which relief could be granted."

II.   **PREVIOUS LAWSUITS**

A.   Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action?     Yes (√)     No ( )

B.   Have you begun other lawsuits in state or federal court relating to your imprisonment? Yes (√)   No ( )

C.   If your answer to A or B is Yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.   Parties to this previous lawsuit.

Plaintiffs: _Antoine Jones 241912_

Defendants: _MRS RAchdel licheR_

2.   Court (if federal court, name the district; if state court, name the county)
_District of columbia_

3.   Docket number _N/A   Havent Receive_

4.   Name of judge to whom case was assigned: _N/A Havent Receive_

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?) _N/A    Haven't receive civil Action Number yet._

6. Approximate date of filing lawsuit: _April 2007_

7. Approximate date of disposition: _Havent receive information_

## III. PLACE OF CONFINEMENT

_C.O.F. (DC Jail) 1901 D st SE WDC 20003_

A. Is there a prisoner grievance procedure in this institution?    Yes (✓)    No ( )
If your answer is Yes, go to Question III B. If your answer is No, skip Question III B,C and D and go to Question III E.

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?
Yes ( )    No (✓)

C. If your answer is Yes to Question III B;

1. To whom and when did you complain? _N/A_

2. Did you complain in writing? (Furnish copy of the complaint you made, if you have one.)    Yes ( )    No (✓)

3. What, if any, response did you receive? (Furnish copy of response, if in writing.) _N/A_

4. What happened as a result of your complaint?    _N/A_

D. If your answer is No to Question III B, explain why not.    _N/A_

E. If there is no prison grievance procedure in the institution, did you complain to prison authorities?    Yes ( )    No ( )    _N/A_

F. If your answer is Yes to Question III E;    _N/A_

1. To whom and when did you complain? _N/A_

2. Did you complain in writing? (Furnish copy of the complaint you made, if you have one.) _N/A_

3. What, if any, response did you receive? (Furnish copy of response if in writing) _N/A_

4. What happened as a result of your complaint? _N/A_

## IV. PARTIES

In item A below, place your name and prison number in the first blank and your present address in the second blank. Do the same for additional plaintiffs, if any.

A. Name of Plaintiff: _Antoine Jones 241912_
   Address: _1901 D St SE, WDC 20003_

In item B below, place the full name of the defendant(s) in the first blank, their official position in the second blank, their place of employment in the third blank and their address in the fourth blank. Do the same for additional defendants, if any.

B. Defendant: _NORMA Horne_ is employed as _MPD Detective_ at _Safe street task force_
   Address: _District of columbia_

   Defendant: _SA Kelli OBrien_ is employed as _FBI Agent_ at _Federal Bureau Investigation_
   Address: _Washington field house_

   Defendant: _Maria Delaney_ is employed as _Executive Director_ at _A.B.R.A_
   Address: _District of columbia_

   Defendant: _Renalda Shaw_ is employed as _FBI_ at _Federal Bureau Investigation_
   Address: _Washington field house_

## V.    STATEMENT OF CLAIM

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include the names of other persons involved, dates and places. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra sheets if necessary. F B I, M.P.D And the A.B.R.A SEARCH MY NIGHT club, took MY business Liquor Licence WHICH cost me not to open up for business. NORMA Norne - MPD Detective WAS Responsible in Planting AN illgal Gun in the Night club main offices And ABRA Executive Director MARIA Delaney WAS Responsible in Planting Hotels Receipts And Hotel CARDS in the Night club UPStairs office. THere WAS no ProbableCAUSE in taking MY ABC Liquor Licence or Probable CAUSE to enter the Night club.

## VI.    RELIEF

State briefly exactly what you want the Court to do for you.   I want the court to investigate, cHARge NORMA Nonne - MPD Detective And MS MARIA Delaney - ABRA Executive Director for Police Misconduct, And foul PlAy. I AM Requesting 1 million Dollars for DAMAges.

Signed this 15 day of _____ May _____, 2007

_____
Antoine Jones
(Signature of Plaintiff)


I declare under penalty of perjury that the foregoing is true and correct.

_5/15/07_
(Date)

_____
Antoine Jones
(Signature of Plaintiff)

**Complaint filed by Antoine Jones (pro se)**

DC Metropolitan Police Department, the FBI & DC Government ABRA

Antoine Jones, Owner, Club Levels, 1960 Montana Avenue, NE, Washington, DC
Law Enforcement Misconduct, Foul Play, and Framing the Defendant

**Complaint 1:**

I, Antoine Jones, charge that on October 24, 2005, Detective Norma Horne planted a gun inside the
Club Levels located at 1960 Montana Avenue, NE, Washington, DC in the main office. Planting
evidence inside the club owned by me is a clear case of misconduct and foul play. This fact was made
evident by Detective Horne's trial testimony which contradicts the statements Rachel Lieber
(prosecutor) repeatedly made in pre-trial and trial. It is alleged that a gun was found inside Club
Levels. A photograph of a gun was presented. In the photograph, the gun was surrounded by black
cloth. According to Ms. Lieber, the agents found a gun inside Club Levels in the office inside the desk
drawer. However, this contradicts Detective Horne's testimony. Detective Horne stated that a gun
was found inside the Club in the office behind the door, on the floor. The photograph further
contradicts both statements because it shows a gun surrounded by black cloth. In the photograph the
gun was clearly not on the carpeted office floor inside the nightclub, nor is it inside the desk drawer.
The interior of the desk drawer is white laminate. The detective testified, under oath and with certainty
that the gun was found inside the office behind the door under a black box. Detective Horne was
questioned extensively on this matter during trial and she repeatedly described the exact location where
the gun was found inside the office at the club, behind the door under the black box. Then Detective
Horne was presented with the photographs of the same area and it was determined that there were
many discrepancies in "exactly where the gun is alleged to have been found inside the club." A
thorough review of the photographs which were presented at trial, demonstrates that the gun was not
photographed in the location which was first reported nor was the gun photographed at any location
inside the nightclub. All of these discrepancies are due to the fact that there was no gun at the club and
the entire story of the gun being found inside the office at the club was a fabricated story.

I further charge that during the FBI's search of Club Levels on October 24, 2005, Ms. Maria Delaney, Executive Director of the ABRA, Washington, DC, planted bogus papers and hotel receipts which were later photographed by the agents in "Room J". Ms. Delaney's presence inside the club during an official FBI search is questionable at best. Ms. Delaney further removed the licenses from the premises of the club without probable cause and without granting me the opportunity to answer any allegations. Ms. Delaney's presence raises a number of questions in reference to planting evidence, tampering with the investigation and foul play.

The FBI agents also failed to leave a copy of a search warrant at the location at the conclusion of the search. I was presented with a one-page inventory sheet at FBI headquarters and asked to sign it. I was not presented with a search warrant or Attachment A as is required by law.

In this instance, the planting of bogus evidence was to incriminate myself and others charged along with me in criminal court.

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

F
07-1300
RSL

## I (a) PLAINTIFFS

Antoine Jones

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro SE (PR)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
# 241-912

## DEFENDANTS

Detective Norma Horne, et al.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:07-cv-01300
Assigned To : Leon, Richard J.
Assign. Date : 07/23/2007
Description: PRO SE GEN. CIVIL

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☒ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☒ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

O

| ☐ G. *Habeas Corpus/* 2255 | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** ○ | Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES   ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☒ YES  ☐ NO   If yes, please complete related case form.

**DATE** 7/23/07   **SIGNATURE OF ATTORNEY OF RECORD** IV.D

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd

*NORMA HORNE GRAND JURY*
*JAN 26 2006*

5

1    COURT REPORTER.    They're just one sticker?

2         MR. GEISE.    Why don't we just do one sticker.    That

3    would probably be easier.    *New transcript*

4         WITNESS.    And it says on the list ("we") recovered a

5    9mm Ruger.    And as you -- as the pictures come around, it's

6    going to be the black room that looks like an office.    It's

7    black.    And you'll see the picture of the Ruger.    It's -- an

8    example would be -- if this was the black box it was over top

9    of that.    We raised that up and the gun was underneath, and

10   you'll see the photo of the gun with that raised.    And

11   photographs, mail matters, phone numbers, receipts, a money

12   counting machine and cell phones    Also, as I go through some

13   of these search warrants, this is not everything that we

14   seized.    We limited the list down to what we thought were

15   items of interest and pertaining to what we were -- the

16   wiretap and the -- and criminal matters.    I'll stop there.    Do

17   you want me to just move onto the next one and pass the

18   pictures or how do you all --

19        MR. GEISE.    Do any members of the Grand Jury have

20   any questions at what was found at Levels?

21        (No oral response by the Grand Jury.)

22        BY MR. GEISE:

23   Q.    Now, just for reference, what time did these

24   pictures occur, approximately in the morning?

25   A.    Approximately 6:00 a.m., 6:30 a.m.    Wake up call.

*Ambrose Boy Cho named*
*Detention Hearing.*
*They said the Gun was in the office*

5

1  the number of times "Jones" is contained in the proffer, I

2  certainly haven't but it's, I would submit, probably every

3  page.  So I don't intend to belabor the factual proffer

4  much beyond identifying that -- or highlighting that

5  $69,000.00 was taken from his Jeep Grand Cherokee and a

6  gun was recovered from the office of his nightclub,

7  Levels.  I'm not sure that that's actually articulated in

8  the proffer.  Frankly, I haven't reviewed it in the last

9  few hours, where the gun was actually located within the

10  nightclub, but that was from a drawer in a desk in the

11  officer of the nightclub, Levels, of which he is the sole

12  proprietor.

13       I think that in every other respect the factual

14  proffer is comprehensive as to Mr. Jones.

15       The only other note I would make is that while

16  the Government has in fact included the substance of

17  several of the wire intercepted telephone calls on

18  Mr. Jones's cellular telephone, this is but a teeny-tiny

19  fraction of the number of phone calls that we've

20  intercepted that contained similar content.

21       You will see that throughout the proffer we talk

22  about numerous telephone conversations regarding tickets,

23  numerous telephone conversations regarding money, and I

24  just want to highlight that point to Your Honor.  I think

25  there was some confusion when I spoke with some of the

*Important*

Rachel Lieber - Guns

**13**

```
1   Q   I'm going to show you now Levels SW-3.  What is that?
2   A   That's the same office but facing the opposite direction
3   in the office.
4   Q   I see the prominent letter H affixed to the wall.  Why
5   did you do that?
6   A   Every room that we photographed has a letter.
7   Q   Okay.  And we'll get to what was seized in a minute, but
8   did you recover a number of items from Room H, the office in
9   Levels?
10  A   Yes, there were some items recovered from there.
11  Q   Okay.  I'm going to show you Levels SW-4.  Do you see
12  that?
13  A   Yes.
14  Q   What is that a picture of?
15  A   That's a Ruger nine millimeter handgun.
16  Q   Where was it?
17  A   That was located in Room H.  There was, if you look at
18  this box right here, it was similar to this box.  You had to
19  lift the box up.  And underneath it was where the gun was
20  laying on the floor.
21       MS. LIEBER:  And just for the record, the Detective
22  is pointing to a wooden, caramel-colored wooden box sort of
23  affixed to the right most wall of the courtroom just below
24  the exit sign towards the jury room.
25
```

**14**

BY MS. LIEBER:
```
1   BY MS. LIEBER:
2   Q   I'm going to show you Levels SW-5.  What is that?
3   A   That's another photograph of the weapon and they have
4   taken the magazine out of the weapon.
5   Q   Okay.  I see some shiny objects here.  What are those?
6   A   The ammunition.
7   Q   So was the gun loaded?
8   A   Yes.
9   Q   I'm going to show you Levels SW-44.  What is that?
10  A   That's the upper level of the Club.
11  Q   Levels SW-45?
12  A   I believe that's the upstairs.  Can I actually look at
13  the photo?
14  Q   Sure.
15  A   This is actually downstairs, and it depicts the stage
16  that you go off to the side to where the office is.
17  Q   Put this back on here now.  Which direction, on which
18  side of the photograph is the office?
19  A   Actually, the photo is taken somewhere near the entry,
20  and in the picture where you see the steps off to the left.
21  Q   Right here?
22  A   Yes.
23  Q   Yes.
24  A   The office is down there on the right.
25  Q   And finally, I'll show you Levels SW-46.  What is that a
```

**15**

```
1   picture of?
2   A   That's another one of the bars that's located in the
3   Club.
4   Q   Now, Detective Horne, you said a gun was recovered
5   inside the nightclub.  I'm going to show you what I marked as
6   Levels SW-6.
7        MS. LIEBER:  Your Honor, I'm going show this to the
8   marshals so they know.
9        THE COURT:  Okay.
10       MS. LIEBER:  Your Honor, I'm going to move on from
11  that for a minute.
12  BY MS. LIEBER:
13  Q   Was the money counting machine also recovered?
14  A   Yes.
15  Q   Where was that recovered from?
16  A   I believe it was on the lower level of the Club, entry
17  level.
18  Q   Detective Horne, I've just shown you Levels SW-43, I
19  believe.  What is that?
20  A   It's the money counting machine that was recovered
21  October 24, 1960 Montana Avenue.
22  Q   October 24, 2006?
23  A   2005, I'm sorry.
24  Q   No, that's okay, 1960 Montana Avenue?
25  A   Yes.
```

**16**

```
1        MS. LIEBER:  Your Honor, at this time we move
2   Levels SW-43 into evidence.
3        THE COURT:  Any objection?
4        MR. BALAREZO:  No, Your Honor.
5        THE COURT:  Forty-three is admitted.
6        (Government Exhibit Number Levels SW-43
7         was admitted into evidence.)
8        MS. LIEBER:  Your Honor, the weapon is now clear,
9   if I may approach the witness.
10       THE COURT:  What number is this?
11       MS. LIEBER:  This is Levels SW-6.
12       THE COURT:  Any objection?
13       MR. BALAREZO:  No, Your Honor.
14       (Government Exhibit Number Levels SW-6
15        was admitted into evidence.)
16  BY MS. LIEBER:
17  Q   What is that?
18  A   This is the nine millimeter handgun that was recovered
19  that morning from Room H at 1960 Montana.
20  Q   Is the clip in there also?
21  A   Yes.  The magazine is in here and the actual ammunition
22  should be in the envelope laying on the table there.
23       MS. LIEBER:  And Your Honor, I just want to move
24  that Levels SW-6 into evidence.
25       THE COURT:  I think we've already put it into
```

*IV.13. 11.18  Rachel Oeben (sp?)*

21

1      MS. LIEBER:  I have nothing else for this witness.
2  Thank you, Your Honor.
3      THE COURT:  I think, at this time, ladies and
4  gentlemen, we will take a ten-minute recess.  Please do not
5  discuss your testimony.  We will resume in about ten minutes.
6      (Jury Out.)
7      (A brief recess was taken.)
8      THE COURT:  Before you begin, Mr. Balarezo, just
9  one quick question.  Did the Government or the defense have
10  any further case law or anything further on those two, I've
11  taken under advisement, two exhibits?
12      MR. GEISE:  Your Honor, I did review a David and
13  Patrick last night, though and I'm prepared, if the Court
14  wants any discussion on it.
15      THE COURT:  Okay, we'll take it up, before or right
16  after lunch.  Are we ready for the jury?
17      When do we need this 404(b) instruction?
18      MR. GEISE:  Your Honor, I'm not even sure we'll get
19  to it today.  It's when we move in the first, we'll probably
20  put it in after we move in the evidence from Mr. Huggins's
21  house.  We've got to go through the cross examination of
22  Detective Horne.  We've got the ICE agent.  So, late today,
23  more likely tomorrow morning, tomorrow I think.
24      (Jury Present.)
25      THE COURT:  Okay, are we ready to proceed?

22

1      MS. LIEBER:  We are, Your Honor.
2      THE COURT:  Are you ready, Mr. Balarezo?
3  You're still under oath.
4      MR. BALAREZO:  Yes, Your Honor.  May I proceed?
5      THE COURT:  Sure.
6      MR. BALAREZO:  Good morning, ladies and gentlemen.
7                    CROSS EXAMINATION
8  BY MR. BALAREZO:
9  Q  Good morning, Detective Horne.
10  A  Good morning.
11  Q  Let me start off with a couple questions about, this is
12  not the first time you've testified in a trial; is that
13  correct?
14  A  Not the first time I've testified in a trial?
15  Q  In a trial?
16  A  Correct.
17  Q  In fact, you testified in another trial that I did
18  earlier this year, right, M Street?
19      THE COURT:  Some unrelated trial?
20      MR. BALAREZO:  Unrelated trial?
21      THE WITNESS:  Oh, yes.
22      MR. BALAREZO:  Totally unrelated trial, right?
23      THE WITNESS:  Yes.
24  BY MR. BALAREZO:
25  Q  You are aware that you take an oath when you come on to

*Mistaken ID by Norma Horne of Mr Jones*

23

1  tell the truth and nothing but the truth.  And you do that
2  because you want to tell the jury, I'm telling the truth?
3  A  Correct.
4  Q  You can trust me basically, right?
5  A  Yes, sir.
6  Q  And you do know that, basically, you're sitting there as
7  a witness, the jury is looking at you to get information?
8  A  Correct.
9  Q  And to be able to rely on that information and to assess
10  what that information means, right?
11  A  Yes, sir.
12  Q  Now, the first thing you did when you came on today with
13  the prosecutor was make a correction as you called it?
14  A  Yes.
15  Q  Something you said yesterday, right?  That was regarding
16  a picture that was shown to you that you identified as being
17  Mr. Jones?
18  A  Correct.
19  Q  Right?  Now, yesterday, just so we have it straight, the
20  specific question you were asked, and this is at Page 47,
21  Line 9, you said, I think the prosecutor asked you, And who
22  is the person that zoomed in on there, and that was in
23  relation to --
24  A  It would be 48.
25      THE COURT:  Forty-eight?  Photo Exhibit 48?

24

1  BY MR. BALAREZO:
2  Q  That was with respect to this particular picture, right?
3  A  Correct.
4  Q  Your answer was, That's Mr. Jones.  That's all you said
5  and the picture was taken off the screen, right?
6  A  Correct.
7  Q  Now, you said that yesterday because you were certain at
8  the time that you saw it yesterday that was Mr. Jones, right?
9  A  Like I said, I made a mistake yesterday.  We went
10  through kind of quickly.  I knew when we, when I actually
11  drove in there, that there was another jeep there.  And
12  Special Agent Yanta was photographing in the back of the van.
13  I actually exited so I wanted to correct that.
14  Q  I understand that, but yesterday when you sat there, you
15  said, That's Mr. Jones and you left it at that, right?
16  A  That's what I said.
17  Q  And then something happened overnight and you realized
18  that you had made a mistake, right?
19  A  Actually, it was shortly after, but all the attorneys
20  had left.
21  Q  That's why you contacted Ms. Lieber and told her you
22  made a mistake and she said, well, correct it tomorrow
23  basically, right?
24  A  No, I actually contacted and asked her if she could -- I
25  told her there was a discrepancy that I needed to see some

*MR. NORRIS - Next Page → Gun*

**25**

1   Q. Okay. And that was the event that on the backside appears
2   to be promoted at one, two, three, four, five -- six different
3   establishments; is that correct?
4   A. Correct.
5   Q. Okay. And it appears that it's going -- on locking down
6   the city, this Hurricane Katrina relief is going on
7   simultaneously on the 27th at six different locations; is that
8   correct?
9   A. Okay. Yes.
10  Q. And that would have been September 27th, 2005; correct?
11  A. Correct.
12  Q. And of those six locations, one of them is the Levels
13  Nightclub; correct?
14  A. That's correct.
15  Q. And then the additional flyer in this Exhibit 18-A was the
16  birthday party event for October 1st; is that correct?
17  A. Correct. Correct.
18  Q. And this is the one that talks about half price tickets for
19  Libras; is that correct?
20  A. Correct.
21  Q. And I'm assuming if your birthday was October 1st, you'd be
22  a Libra, does that make sense or --
23  A. I'm not sure what a Libra --
24  Q. Okay. I'm not good --
25  A. I'm not a Libra.

**26**

1   Q. I'm not good with that either.
2       THE COURT: We'll have to find somebody who's a Libra.
3       MR. NORRIS: Thank you, Judge.
4       THE COURT: Anybody here?
5       MR. NORRIS: Is the Court willing to take judicial
6   notice of astrological signs, Your Honor?
7       THE COURT: I don't know, but we've got one.
8   What is your -- do you know what your sign is?
9       THE JUROR: Yeah, I'm a Libra.
10      THE COURT: September what?
11      THE JUROR: 28th.
12      THE COURT: 28th?
13      THE JUROR: Yeah.
14      MR. NORRIS: And that would include October 1st?
15      THE JUROR: Yes.
16      THE COURT: Okay. Thank you.
17      MR. NORRIS: Thank you, Your Honor.
18      THE COURT: I'll take judicial notice if nobody
19  objects that Libra includes October 1.
20      MR. NORRIS: I'm using the exhibit, you're using the
21  book; right?
22      THE COURT: If no one objects, we will be okay.
23      MS. LIEBER: No objection, Your Honor.
24      THE COURT: All right. Thank you. Otherwise we will
25  have to bring in some astrological chart.

**27**

1       Thank you for your help.
2       MR. NORRIS: And if I could approach again, Your
3   Honor.
4   BY MR. NORRIS:
5   Q. In addition to the fliers, you were also shown Jones No.
6   19; is that correct?
7   A. Correct.
8   Q. And 19 had tickets for two different events; is that
9   correct?
10  A. Correct.
11  Q. Okay. And one of the events is the actual ticket, not just
12  the flier for the Monday night, September 19th, football game;
13  right?
14  A. Correct.
15  Q. Okay. Now, in addition to the calls we've already heard,
16  it's fair to say that -- I believe you already testified that
17  the calls that are included in Volumes I and II of the
18  transcript books that were prepared are just a small percentage
19  of the thousands of calls; correct?
20  A. Correct.
21  Q. Okay. And there's numerous calls that if they talked about
22  either personal conversations or legitimate business concerns
23  weren't necessarily recorded; is that correct?
24  A. I mean, they are all recorded.
25  Q. Okay. Well, some of the wiretaps there would actually be

**28**

1   some discretion about how much of a call was recorded; is that
2   correct?
3   A. Correct.
4   Q. Okay. And that's under this concept of minimization; is
5   that right?
6   A. Correct.
7   Q. Okay. So if it was clearly something that wasn't relevant
8   to the criminal investigation, it -- a conversation might not
9   either be recorded at all or it might be recorded in a reduced
10  or minimized fashion; correct?
11  A. Correct.
12  Q. Okay. So -- and in addition to just personal discussions,
13  that would also include legitimate business discussions about,
14  say, Levels Nightclub; correct?
15  A. Some of that, yes.
16  Q. Okay. So there are some discussions about Levels Nightclub
17  and the workings of it between Mr. Jackson and Mr. Jones that,
18  first off, were not completely recorded; correct?
19  A. Some probably -- some weren't.
20  Q. Okay. And then there would be some that might have been
21  recorded but weren't transcribed; is that correct?
22  A. Might have been recorded, not transcribed.
23  Q. Yes, didn't make their way into the books, the transcripts?
24  A. Oh, correct.
25  Q. Okay. And that's because the book of transcripts is based

2

*Mr Norris Cross on Gun* (handwritten)

---

**33**

1  A. Yes, sir.
2  Q. Okay. Now, let me show you Levels SW-4. This is the
3  photograph where you are referring to the gun being found
4  under; is that correct?
5  A. Correct.
6  Q. Okay. And according to your direct testimony, in this
7  picture, SW-4, the gun is actually on the ground or on the
8  carpeting in the office; is that correct?
9  A. It's on the carpet, yes, sir. *Perjury* (handwritten)
10 Q. Okay. And there is an item sort of in the top center
11 portion, looks like maybe three sides of a box. Is that what
12 you're referring to?
13 A. Yes, the box is being held up. *No Black Box* (handwritten)
14 Q. Okay. And you actually saw that box; is that correct?
15 A. Yes, sir.
16 Q. And where was that box located?
17 A. In the office, which is Room H. *Perjury* (handwritten)
18 Q. Okay. And the office is depicted in Government's Levels
19 SW-2; is that correct?
20 A. That's part of it, yes, sir.
21 Q. Okay. Do you see the black box in this photograph?
22 A. It would be behind the photographer. There is another
23 photo they took showing the backside of the office →
24 Q. Okay.
25 A. — that I was shown on direct. If you have that one, I

---

**34**

1  can —
2        MR. BALAREZO:  Okay. Court's indulgence.
3  BY MR. NORRIS:
4  Q. I believe I have the photographs that were used on direct.
5  Let me show you what's been marked as Government's Levels SW-3.
6  Is this the photograph to which you're referring?
7  A. Yes. If you — behind the door —
8  Q. Okay.
9  A. — is the — the black box is behind the door, the door is
10 open and obstructing that part of the view.
11 Q. Okay. Well, if I may, let me put side-by-side Government's
12 SW-2 on the left side of the Elmo and Government's SW-3 on the
13 right side of the Elmo. It's fair to say they both show the
14 door. In SW-2 it's in the middle of the right side where I'm
15 pointing; is that correct?
16 A. It's to the right of the photo, yes, sir.
17 Q. Okay. And in SW-3 it's middle left?
18 A. To the left of the photo, yes, sir.
19 Q. Okay. And when I refer to "it," I'm referring to the door;
20 is that correct?
21 A. Yes.
22 Q. Okay. Fair to say neither of those photographs show the   ★ (handwritten)
23 black box where you say the gun was recovered; is that correct?
24 A. No, sir.
25 Q. Okay. And you weren't shown any other photo —

---

**35**

1        THE COURT:  You mean yes, it's correct, you can't see
2  it in the picture?
3        THE WITNESS:  Correct.
4  BY MR. NORRIS:
5  Q. Okay. And you weren't shown any other photographs on
6  direct that actually showed where the black box was in that
7  room; correct?
8  A. No, I know where the box was.
9  Q. Okay. But, Detective, you would agree with me if you're
10 documenting a crime scene where contraband is recovered, you'd
11 want to take a photograph showing where in the room that
12 contraband is; is that correct?   *Very Important* (handwritten)
13 A. Correct.
14 Q. And there's no photograph of that black box oriented in the
15 room that you're aware of; is that correct?
16 A. Correct.
17 Q. The only photograph of the black box is SW-4, and you can't
18 really tell where that box is in that photograph; correct?
19 A. That's fair.
20 Q. Okay. And there is no evidence connecting that gun to any
21 one individual, is that fair to say?
22 A. That's fair.
23 Q. There's certainly nothing connecting it to my client,
24 Mr. Jackson; correct?
25 A. That's fair.

---

**36**

1  Q. Now, you testified on direct about Mrs. Jones being a real
2  estate agent; is that correct?
3  A. Yes, sir.
4  Q. Okay. And that she was assisting my client in the possible
5  purchase of a home; is that correct?
6  A. Correct.
7  Q. Okay. Now —
8        MR. NORRIS:  Court's indulgence. With the
9  Government's assistance, if we could play call number 2668.
10 And again, that's Volume I, the Adrian Jackson section, 2668,
11 and it's on page 268.
12      (CD is played.)
13 BY MR. NORRIS:
14 Q. Okay. And, Detective, it's fair to say in that call
15 they're talking about both townhomes, townhouses, and
16 single-family homes; is that correct?
17 A. Correct.
18 Q. Okay. And talking about the relative prices for these
19 things in certain areas, like Bowie and Largo; correct?
20 A. Correct.
21 Q. And how nice of a townhouse you can get versus how nice of
22 a single-family home you can get in those various areas; is
23 that correct?
24 A. Correct.
25 Q. Okay. That isn't code, they're actually talking about

---

*Gun cross end* (handwritten)



10 24 05
Ruger P94 9mm. pistol
Ser#308-07610
recovered from 1960 Montana
Ave NE Washington. D.C.

CRime
scene levels
Night club



During the 

During notes
The Gun was in Room H office Draw. Refere to Maynard detention
Hearing after the trial.

There's no Black Rod Hell on the 1 Glock man

Dective Horne could Print out a Black Rod contradiction

this is not the club complets she testified the gun was [illegible] on the carpet



This club carpet, not flat or something the texture in the photo with the



The office PHoto is Bright, the Gun PHoto's ARe Black And DARk.
The lightning is very BRight, the PHotos ARe very DARk.

245D-WF-213679
10/24/05
Intratec .45 cal. pistol
Ser#001814
recovered from 5703 Gloria Dr
Suitland, MD

*Crime scene*
*John R.*





WP-2158079

10/24/05

Smith & Wesson .357 cal

revolver Ser#BPJ84

recovered from 5701

Suitland, MD











Crime Scene







My Little nephew from the pellet gun :)





CAMERA _____
FILM : ASA _____
ROLL No. _____

LENS - Normal - N
Wide - W
Macro - M
Tele - T

LIGHT - Available - A
Elec.Strobe - E
Flashbulb - F

| Photo No. | Lens | Light | SS | f - stop | Description | Photo Log Sketch | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | | | | | Front Door - Entry | | |
| 2 | | | | | Front Door Entry | | |
| 3 | | | | | Room A - Entry | | |
| 4 | | | | | Room A - Entry | | |
| 5 | | | | | Room A - Entry | | |
| 6 | | | | | Room B - Entry | | |
| 7 | | | | | Room B - Entry | | |
| 8 | | | | | Room B - Entry | | |
| 9 | | | | | Room B - Entry | | |
| 10 | | | | | Room B - Entry | | |
| 11 | | | | | Bathroom - Entry | | |
| 12 | | | | | Bathroom - Entry | | |
| 13 | | | | | Room E - Entry | | |
| 14 | | | | | Room E - Entry | | |
| 15 | | | | | Room F - storage | | |
| 16 | | | | | Room F - storage | | |
| 17 | | | | | Room F - storage | | |
| 18 | | | | | Room F - storage | | |
| 19 | | | | | Room F - office | | |
| 20 | | | | | Room F - office | | |
| 21 | | | | | Room F - closet | | |
| 22 | | | | | Room G storage | | |
| 23 | | | | | Closet W/o of Stm | | |
| 24 | | | | | Self W/ magazine | | |
| 25 | | | | | Room K - Entry | | |
| 26 | | | | | Room L | | |
| 27 | | | | | Room L | | |
| 28 | | | | | Room N Bed | | |
| 29 | | | | | Room N Hallway | | |
| 30 | | | | | Room S Kitchen | | |
| 31 | | | | | Room S Kitchen | | |
| 32 | | | | | Room S Kitchen | | |
| 33 | | | | | Room S Street | | |
| 34 | | | | | Room O Hallway | | |
| 35 | | | | | Room S office | | |
| 36 | | | | | | | |

CAMERA _____
FILM : ASA _____
ROLL No. _____

LENS - Normal - N
Wide - W
Macro - M
Tele. - T

LIGHT - Available - A
Elec.Strobe - E
Flashbulb - F

| Photo No. | Lens | Light | SS | f - stop | Description | Photo Log Sketch | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | | | | | Placard | | |
| 2 | | | | | Hallway | | |
| 3 | | | | | Room P / Bathroom | | |
| 4 | | | | | Room O | | |
| 5 | | | | | Room Q / Food Hot Storage | | |
| 6 | | | | | Room K / Toilet | | |
| 7 | | | | | Room M | | |
| 8 | | | | | Room MM / Bunk area | | |
| 9 | | | | | Room M / Door | | |
| 10 | | | | | Room N | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |
| 29 | | | | | | | |
| 30 | | | | | | | |
| 31 | | | | | | | |
| 32 | | | | | | | |
| 33 | | | | | | | |
| 34 | | | | | | | |
| 35 | | | | | | | |
| 36 | | | | | | | |















10/24/2005

**Room H**

Misc Keys
Photo Disc
Misc Receipts
Telephone #'s

Ⓝ

Renelda Shaw    K. Olivia

Levels
1960 Montana
Washington, DC



Levels Night Club
1960 Montana AVE, NE
WASHINGTON, DC 20002

Room H:

1) LG Silver Cellular Telephone

2) VERIZON SAMSUNG
Silver Cellular Telephone in case

3) MISC "Level" BUSINESS DOC

4) Folder w/Tax Returns for Employees



(15)

Ronelle Shaw
Kellie O'Brien

2810 WF 213679



**Metropolitan Police Department** — Incident-Based Event Report — Washington, D.C.

## PART I - CLASSIFICATION OF EVENT

- **1. TYPE OF REPORT:** ● Incident
- **2. DATE AND TIME OF EVENT:** Start Date: Feb 24 05, 6:00
- **3. DATE OF REPORT:** Feb 24 05
- **4. TIME OF REPORT:** 10:08
- **8. COMPLAINT NUMBER:** 146580

**9. EVENT LOCATION ADDRESS:** 1960 Montana Ave NE

**10. REPORT RECEIVED BY:** ● On-scene
**11. IS RADIO RUN LOCATION AND EVENT LOCATION THE SAME?** ● No
**12. PROPERTY TYPE:** ● Private

**13. EVENT NO. 1:** Search Warrant

**16. FORCED ENTRY?** ● Yes
**17. POINT OF ENTRY:** Front Door
**18a. Method Used:** Force
**18b. Tools Used:** Ram

**20. SUSPECTED HATE CRIME?** ● None

## PART II - VICTIM INFORMATION

**24. NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1:** Horne Norma

**26. VICTIM TYPE:** ● Police officer

**31. BUSINESS PHONE:** (202) 278 2000

**49. BUSINESS ADDRESS/SCHOOL:** 300 Indiana Ave NW

**36. OCCUPATION:** Police officer
**IS EVENT RELATED TO OCCUPATION?** ● Yes

**52. STATUS:** ● Open

**IS VICTIM #1 THE REPORTING PERSON? IF NO, ENTER THE NAME, ADDRESS, AND PHONE NUMBER OF THE REPORTING PERSON.**  ○ Yes  ○ No
Name: N/A    Address:    Phone-Area Code:

**DID THE REPORTED EVENT OCCUR AS A RESULT OF AN INTRA-FAMILY MATTER?** ○ Yes ● No

**WAS PD FORM 378A ISSUED?** ○ Yes ● No

**IS CPO/TPO OUTSTANDING?** ○ Yes ● No ○ Unknown   IF YES, ENTER CPO/TPO #:

**INJURIES** Use the following codes to describe injuries. (Mark all that apply)
N = None Visible   M = Apparent Minor Injury   B = Apparent Broken Bones
O = Other Major Injury   I = Possible Internal Injury   G = Gunshot
L = Severe Laceration   T = Loss of Teeth   U = Unconscious

| INJURED | NUMBER | INJURY CODE | DESCRIBE INJURY | WHERE TAKEN | BY WHOM | DCFD AMB. | DCPD AMB. # | STATUS |
|---|---|---|---|---|---|---|---|---|
| Victim | | | N/A | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| Victim | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| Victim | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| Victim | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| Suspect | | | | | | ○ Yes ○ No | | ○ Admitted ○ Released |

**PART III - PROPERTY**
Codes: S = Stolen  E = Evidence  R = Recovered  F = Found  I = Impounded  V = Vehicle from which theft occurred  D = Alleged drug type  L = Lost  P = Suspected proceeds of crime  O = Other

a. Property Book & Page No.: FBI
b. Location of Property Book:

| Code | Description of Item(s) | Serial Number/Operation ID No. | Model No. | Color | Size | Quantity | Comp. Value | Age | MPDC Value |
|---|---|---|---|---|---|---|---|---|---|
| E | Documents, Photos, CD | | | | | | | | |
| E | Ruger P94 - 9mm pistol model | 308 0740 | P94 | | | 1 | | | |
| E | False Bottom Can | | | | | | | | |
| E | Money Machine, Cell phone (2) | | | | | | | | |
| E | Keys, Shirt, Briefcase w/documents | | | | | | | | |

**VEHICLE INFORMATION**  Vehicle operated/used by: ○ Victim ○ Suspect ○ Victim's vehicle taken by suspect
| Code | Year | Make | Model | Color | Body | Tag No./State/Year | VIN |
|---|---|---|---|---|---|---|---|

**PART IV - SUSPECT/MISSING PERSON INFORMATION** (Use narrative if additional space is needed.)

**#1** ○ Suspect ○ Missing | a. Race: ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Unknown ○ Other | b. Sex: ○ Male ○ Female ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair
h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using: ○ Alcohol ○ Drugs ○ Computer ○ N/A
q. Weapons Used in Offense (Mark all that apply)
Firearm: ○ Handgun ○ Shotgun ○ Other firearm ○ Revolver ○ Semi-automatic ○ Rifle ○ Automatic
Other: ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown
Color | Make | Model | Caliber

**#2** ○ Suspect ○ Missing | a. Race: ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Unknown ○ Other | b. Sex: ○ Male ○ Female ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair
h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using: ○ Alcohol ○ Drugs ○ Computer ○ N/A
q. Weapons Used in Offense (Mark all that apply)
Firearm: ○ Handgun ○ Shotgun ○ Other firearm ○ Revolver ○ Semi-automatic ○ Rifle ○ Automatic
Other: ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown
Color | Make | Model | Caliber

**#3** ○ Suspect ○ Missing | a. Race: ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Unknown ○ Other | b. Sex: ○ Male ○ Female ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair
h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using: ○ Alcohol ○ Drugs ○ Computer ○ N/A
q. Weapons Used in Offense (Mark all that apply)
Firearm: ○ Handgun ○ Shotgun ○ Other firearm ○ Revolver ○ Semi-automatic ○ Rifle ○ Automatic
Other: ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown
Color | Make | Model | Caliber

**PART V - MISSING PERSONS**

| 61 | PROBABLE CAUSE OF ABSENCE AND DESTINATION | 65 | COMPLAINT NUMBER |
|----|----|----|----|

N/A

**1 4 5 8 0 1**

| 66 | IF MISSING PERSON HAS RUN AWAY BEFORE, GIVE DATE AND WHERE LOCATED: | 67 | CLASSIFICATION | 68 | CLASSIFIED BY: |
|----|----|----|----|----|----|

N/A

○ Critical
○ Non-critical

| 69 | PHYSICAL/MENTAL CONDITION (i.e., diabetic) | 70 | DESCRIBE ARTICLES OF JEWELRY WORN AND IDENTIFICATION CARRIED | 71 | NAME OF PARENT/GUARDIAN |
|----|----|----|----|----|----|

N/A

| 72 | ADDRESS OF PARENT/GUARDIAN | 73 | IF JUVENILE, ENTER MOTHER'S MAIDEN NAME | 74 | MISSING PERSON SECTION NOTIFIED (Name) |
|----|----|----|----|----|----|

N/A

| 75 | NARRATIVE   Describe event and action taken. If additional narrative space is needed, use PD Form 251-A. |
|----|----|

Item Number Continued

On 10/24/05 at approximately 0600 hrs. Members of MPD and FBI served a U.S. District Court, District of Columbia search warrant at 1960 Montana Ave NE an A.B.C. establishment called Club Levels. A loaded Ruger P94 9mm semi-Auto pistol, Loaded was among the Items seized. Ruger P94 serial # 308-07410

| 76 | EVIDENCE TECHNICIAN/CSES # | 77 | NAME OF INVESTIGATOR NOTIFIED | 78 | TELETYPE NOTIFIED (Name) | | 79 | TELETYPE # |
|----|----|----|----|----|----|----|----|----|

Norris Horne

| 80 | REPORTING OFFICER'S SIGNATURE | ELEMENT | 81 | OTHER POLICE AGENCY (indicate if report prepared by officer other than MPD) | 82 | SECOND OFFICER'S NAME | ELEMENT | 83 | SIGNATURE OF SUPERVISOR | ELEMENT |
|----|----|----|----|----|----|----|----|----|----|----|

ESD

○ USCP
○ USSS
○ METRO TRANSIT
○ OTHER

BADGE NUMBER

**PART VI - ADDITIONAL INFORMATION   (Use PD Form 251-C for additional victims or suspects.)**

| 84 | NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 3 | 85 | RELATED TO EVENT NO(S). |
| --- | --- | --- | --- |

*N/A*

**VICTIM TYPE**
- Individual
- Financial inst.
- Religious org.
- Police officer
- Business
- Government
- Society/Public
- Other

**DATE OF BIRTH** — Unknown / NA
Month Day Year

**AGE RANGE**
- 0-1 yr.
- 2-12 yrs.
- 13-17 yrs.
- 18-65 yrs.
- Over 65

**SEX**
- Male
- Female
- Unknown

HOME PHONE (   )
BUSINESS PHONE (   )

**RACE/ETHNICITY (Mark all that apply)**
- American Indian/Alaskan Native
- Asian/Pacific Islander
- Black
- Chinese
- Latino/Hispanic
- Jamaican
- Japanese
- Korean
- Vietnamese
- White
- Other
- Unknown/Refused

**HOME ADDRESS** — DC Resident / Non-DC Resident / Unknown

**BUSINESS ADDRESS/SCHOOL**

**OCCUPATION**   **IS EVENT RELATED TO OCCUPATION?** — Yes / No / Unknown

**ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 3**

---

| 98 | NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 4 | 99 | RELATED TO EVENT NO(S). |
| --- | --- | --- | --- |

*N/A*

**VICTIM TYPE**
- Individual
- Financial inst.
- Religious org.
- Police officer
- Business
- Government
- Society/Public
- Other

**DATE OF BIRTH** — Unknown / NA
Month Day Year

**AGE RANGE**
- 0-1 yr.
- 2-12 yrs.
- 13-17 yrs.
- 18-65 yrs.
- Over 65

**SEX**
- Male
- Female
- Unknown

HOME PHONE (   )
BUSINESS PHONE (   )

**RACE/ETHNICITY (Mark all that apply)**
- American Indian/Alaskan Native
- Asian/Pacific Islander
- Black
- Chinese
- Latino/Hispanic
- Jamaican
- Japanese
- Korean
- Vietnamese
- White
- Other
- Unknown/Refused

**HOME ADDRESS** — DC Resident / Non-DC Resident / Unknown

**BUSINESS ADDRESS/SCHOOL**

**OCCUPATION**   **IS EVENT RELATED TO OCCUPATION?** — Yes / No / Unknown

**ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 4**

---

**#4**

*N/A*

a. Race: Suspect / Missing — Asian / Black / White / Latino/Hispanic / Unknown / Other
b. Sex: Male / Female / Unknown
e. Exact Age or Range   d. Height   e. Weight   f. Eyes   g. Hair

h. Complexion   i. Scars   j. Mustache   k. Facial Hair   l. Hat   m. Coat/Jacket   n. Pants   o. Blouse/Shirt

p. Perpetrator Suspected of Using — Alcohol / Drugs / Computer / N/A

**q. Weapons Used in Offense (Mark all that apply)**

Firearm: Handgun / Shotgun / Other firearm / Revolver / Semi-automatic / Rifle / Automatic
Other: Cutting instrument / Blunt object / Motor vehicle / Hands/Feet/Teeth / None / Unknown / Other (specify)
Color   Make   Model   Caliber

---

**#5**

a. Race: Suspect / Missing — Asian / Black / White / Latino/Hispanic / Unknown / Other
b. Sex: Male / Female / Unknown
c. Exact Age or Range   d. Height   e. Weight   f. Eyes   g. Hair

**q. Weapons Used in Offense (Mark all that apply)**

Firearm: Handgun / Shotgun / Other firearm / Revolver / Semi-automatic / Rifle / Automatic
Other: Cutting instrument / Blunt object / Motor vehicle / Hands/Feet/Teeth / None / Unknown / Other (specify)
Color   Make   Model   Caliber
Alcohol / Drugs / Computer / N/A

---

**#6**

a. Race: Suspect / Missing — Asian / Black / White / Latino/Hispanic / Unknown / Other
b. Sex: Male / Female / Unknown
e. Exact Age or Range   d. Height   e. Weight   f. Eyes   g. Hair

h. Complexion   i. Scars   j. Mustache   k. Facial Hair   l. Hat   m. Coat/Jacket   n. Pants   o. Blouse/Shirt

p. Perpetrator Suspected of Using — Alcohol / Drugs / Computer / N/A

**q. Weapons Used in Offense (Mark all that apply)**

Firearm: Handgun / Shotgun / Other firearm / Revolver / Semi-automatic / Rifle / Automatic
Other: Cutting instrument / Blunt object / Motor vehicle / Hands/Feet/Teeth / None / Unknown / Other (specify)
Color   Make   Model   Caliber

145-801



U.S. Department of Jus

Kenneth L. Wains
*United States Atton*
*for the District of Colur*

Judiciary Ce
555 4th Street, )
Washington, D.C. 2(

# PRESS RELEASE

**FOR IMMEDIATE RELEASE**
**Tuesday, October 25, 2005**

For Information, Contact Public Af
Channing Phillips (202) 514-6

## Federal grand jury charges members of major cocaine and cocaine base drug trafficking organization in Northeast Washington, D.C.

### Over 97 kilograms of cocaine and $900,000 seized during raids

**Washington, D.C.** - United States Attorney Kenneth L. Wainstein and Michael A. Mason, Assistant Director in Charge of the Washington Field Office of the Federal Bureau of Investigation, announced that a federal grand jury today charged nine individuals with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, also known as crack, in the District of Columbia and Maryland.

The indictment is the result of a joint law enforcement operation, including a Title III wire intercept, that targeted the narcotics trade and related violence in Northeast, Washington, D.C. Seven of the nine individuals charged were arrested yesterday following the execution of search warrants in nine different locations in the District of Columbia and Maryland, including the nightclub Levels, located at 1960 Montana Avenue, NE, Washington, D.C., which is owned by defendant Antoine Jones. The search warrants resulted in the seizure of more than 97 kilograms of cocaine, three kilograms of cocaine base, several firearms as well as over $900,000 in cash.

Yesterday's operation grew out of a long-term investigation which was conducted by the Safe Streets Task Force, a joint FBI and MPD task force targeting gang activity in the District of Columbia. This investigation focused on the narcotics trade and attendant violence in the Northeast area.

U.S. Attorney Wainstein stated that, "with over $2 million worth of drugs and almost $1 million in cash, these defendants had risen to the top of the drug world. While they were accumulating this wealth, the drugs they allegedly distributed were destroying the health and lives of many of our citizens. Yesterday's law enforcement operation put these defendants out of business and into jail, demonstrating once again that drug dealing is a self-destructive career choice." Assistant Director in Charge Mason stated, "today's indictment is a testament to the dedicated efforts of the members of the Safe Streets Task of the Washington Metropolitan area. I would also like to thank the agents of the Baltimore FBI office who assisted in the Maryland area searches."

Yesterday's operation entailed the joint efforts of over 100 law enforcement officers from the

Federal Bureau of Investigation, the Metropolitan Police Department, and Maryland law enforcement authorities. In the early morning hours yesterday, the officers spread out throughout the District of Columbia and Maryland executing the search warrants. By day's end, they had arrested the seven of the charged defendants and conducted searches of at least 9 different locations related to the drug conspiracy. The drugs seized have a wholesale street value of at least $2 million, while the cash seized will be the target of forfeiture, eventually being used in the ongoing fight against the drug trade.

Arrested and indicted were the following individuals:

1. Antoine Jones, age 45, of Waldorf, Maryland;

2. John Adams, age 40, of Suitland, Maryland;

3. Demetrius Johnson, age 38, of Waldorf, Maryland;

4. Adrian Jackson, age 27, of Landover, Maryland;

5. Alberto Rolando Carillo-Montelongo, age 23, of Tamaulipas, Mexico;

6. Roel Bremea, Jr., age 36, of Mission, Texas; and

7. Ricardo Sanchez-Gonzalez, age 43, of Tamaulipas, Mexico.

Under the federal indictment, the defendants face a minimum of ten years of imprisonment and a maximum sentence of life. The defendants are expected to be arraigned in United States District Court in the next two weeks.

In announcing the indictment, United States Attorney Wainstein and Assistant Director in Charge Mason praised the efforts of the Safe Streets Task Force for its investigation. Specifically commended were FBI Special Agents Stephanie Yanta and Kellie O'Brien and MPD Detectives Norman Horne and Steven Kirschner. They also cited the efforts of Intelligence Analyst Theresa Greenhill; Legal Assistants Diane Brashears, Patricia Hall, and Kim Hall and Assistant United States Attorneys Rachel Lieber and Jack Geise, who are prosecuting the case. Specially recognized were the efforts of Maria Delaney of the Alcoholic Beverage Regulation Administration.

An Indictment is merely a formal charge that a defendant has committed a violation of criminal laws and every defendant is presumed innocent until, and unless, proven guilty.

FD-302 (Rev. 10-6-95)

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    11/21/2005

On October 24, 2005, approximately 6:00 AM, members of the FBI SWAT Team executed a District Court Search Warrant at 1960 Montana Ave., NE Washington, D.C. at a club known as "Levels". The premises were cleared and secured by FBI SWAT members. A team of search agents entered the premises once it was secured. There were no occupants in the building at the time the warrant was executed.

All the rooms in the club were labeled with a letter and then photographed in pre and post search conditions by SA Kellie R. O'Brien. A sketch of the club was also completed by SA Geoffrey S. Maron.

Items seized included but not limited to a 9mm Ruger P94 serial #308-07610 with magazine and rounds, photographs, mail documents, business documents, phone numbers, receipts, and a money machine.

SA Kellie O'Brien seized the evidence at the club and transported the items back to the Washington Field Office of the FBI. These items were submitted to the Evidence Control Room. A copy of the *Lie* search warrant and a seizure list was taken to Antoine JONES at the FBI Field Office. Det. Norma Horne advised JONES of the seizure list and had him sign a copy. A copy was also given to JONES.

Agents and detectives cleared the residence at approximately 8:50 AM. Attached is a copy of the FD-597, photo log, and sketch.

The following law enforcement personnel assisted in the search of 1960 Montana Ave., NE, WDC.

1. SA Kellie O'Brien
2. SA Geoffrey S. Mason
3. SA Chris Fiorito
4. SA William McDermmitt
5. SA James Mollica
6. SA Willie Johnson
7. SA Chad Gallagher
8. ABC Maria Delaney    *is the government, the government*
9. Det. Norma Horne    *was responsible for the press*
10. PS Renalda Shaw    *release.*

102405.302

Investigation on    10/24/2005    at Washington, D.C.

File #  245D-WF-213679-302                Date dictated    11/21/2005

by    SA Kellie R. O'Brien

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
ALCOHOLIC BEVERAGE REGULATION ADMINISTRATION

November 9, 2005

Deniece Jones
12221 Brandywine Road
Brandywine, Maryland 20613

Re:  Power Of Attorney
     Application Number-60860
     License Number-71484
     Antoine Jones
     t/a Levels Entertainment
     1960 Montana Avenue, N.E.

Dear Mrs. Jones;

This is in response to your oral request for information on the above referenced establishment. A search of the official record(s) of the Alcoholic Beverage Regulation Administration (ABRA) revealed that, as of November 8, 2005:

- the above referenced establishment is currently licensed as a Retailer Class C Nightclub (CN03) for the period of: October 1, 2004 through September 30, 2007;
- the establishment has been approved for 200 Seats by the Alcoholic Beverage Control (ABC) Board; and
- the Owner of the establishment is: Antoine Jones.

Please be advised that this letter does not take the place of an ABC license, which is required to be posted to sell or serve alcoholic beverages, pursuant to D.C. Official Code Section 25-711. If you need additional information, please contact me at (202) 442-4425.

Sincerely,

*Barbara A.M. Goodwin*

Barbara A.M. Goodwin
Records Management Specialist
Licensing and Adjudication Division

941 North Capitol Street, N.E., 7th Floor, Washington, D.C. 20002
Phone: (202) 442-4423  Fax: (202) 442-9563



10/24/05

1960 MARITNUA AVE NE
WDC
CLUB LEVELS

Room J
upstairs office

Receipts, Invoices daytimer



FOUND BY Maria Delaney ABRA
Seized by Kellie O'Brien

2810 WE 213679



Bills, Receip
invoices, Reco



③  Money Receipt

Found by Maria Delaney ABRA
.Kellie O'Brien

2810 WP 213679

Club Levels
SEARCH

*Sub* *records* *RM J*



**COMFORT SUITES GWINNETT MALL**
3700 SHACKLEFORD ROAD
DULUTH, GA 30096 USA
(770) 931-9299

Account: 166715
Date: 02/18/05    *Fri*
Page: 1 of 1
Room: 130    RACK
Arrival Date: 02/18/05  09:50
Departure Date:
Frequent Traveler ID:
You were checked out by:
You were checked in by: CZ

MAYNARD, LAWRENCE

7711 GREEN LEAF RD.
HYATTSVILLE, MD 20785

| 02/18/05 | CASH | CASH PAYMENT | -89.27 | ? |
|---|---|---|---|---|
| | | Balance Due: | -89.27 | |

*FRIDAY same day of manaflow contract*

If payment by credit card, I agree to pay the above total charge amount according to the card issuer agreement.

x _____

*No signature*

*These item was planted in Room J, the office ABRA, Executive Director search and seize,*



**COMFORT SUITES GWINNETT MALL**
3700 SHACKLEFORD ROAD
DULUTH, GA 30096 USA
(770) 931-9299
BY CHOICE HOTELS

Room: 130    ?
Arrival Date: 02/18/05  *Fri*
Departure Date:
Account: 166715
Frequent Traveler ID:

Merchant Number:
Approval Number:
Card Type:
Date: 2/18/2005    *Fri*
Card Number:
Total:

If payment by credit card, I agree to pay the above total charge amount according to the card issuer agreement.

LAWRENCE MAYNARD
GREEN LEAF RD.
HYATTSVILLE, MD 20785

?    x _____

*No signature*

*Note look at the Dates, Who will have a Hotel Receipt or Hotel card laying around for almost eight*

SW-00188

*Subpoena Records*



# Holiday Inn
## EXPRESS

*R.M-J*

Lawrence Maynard
7711 Greenleaf Rd
Hyattsville
MD 20785

| | |
|---|---|
| Membership No. | |
| A/R Number | |
| Group Code | |
| Folio/Invoice No. | 17807 |

| | | | | |
|---|---|---|---|---|
| Room No. | **219** | | Page No. | 1 of 1 |
| Arrival | 02-23-05 *WED* | | Cashier No. | 102 |
| Departure | 02-24-05 *THUR* | | User ID | CRATLIFF |

*Check party - surveillance*

www.holidayinnexpress.com

| Date | Description | Charges | Credits |
|---|---|---|---|
| 02-23-05 | Cash | | 89.27 ? |
| | **Total** | 0.00 | 89.27 |
| | **Balance** | -89.27 | |

Guest Signature: _____

I have received the goods and / or services in the amount shown heron. I agree that my liability for this bill is not waived and agree to be held personally liable in the event that the indicated person, company, or association fails to pay for any part or the full amount of these charges. If a credit card charge, I further agree to perform the obligations set forth in the cardholder's agreement with the issuer.

*This item was planted
in room J, upstair office
where ABRO Executive Director
Maria Delaney search and seize.*

Holiday Inn Express Atlanta-Gwinnett Place Mall
3670 Shackleford Rd.
Duluth, GA 30096
Telephone: (770) 935-7171  Fax: (770) 806-1691

*Note: Look at the dates. ABRO, MPAA and the
FBI planted these receipts. They never mention
these receip...*

SW-00189
SW-00189



DEAMOND
301 380 6188

THis item was planted in
Room J, where MARiA Delaney
search and seize.

SW-00184

R M J



These item was Planted in Room J
upstair office where ABRA, Executive
Director Maria Delaney search and
seize items.



# gion

# iction

## ...enure flattered

...were running so
much...since...of the jurors
asked: why couldn't police catch
him with drugs in hand? "If they're
saying...he's...selling drugs to all
those people...I'm sure they could
have arrested him one of those
times," said the juror, asking to be
identified only as a senior citizen.

In 2005, the activities looked
more than compelling to the FBI
and the D.C. police investiga-
tors who concluded that Jones was
a key source for cocaine coming
into the Washington area from a
Colombian cartel operating around
a Texas border town of McAllen.
...investigators moni-
tored...cellphone calls.

Jones, who has drug convictions
in the District and Virginia, lives in
...and owned a nightclub in
Northeast Washington called Lev-
...the now-closed club, prosecu-
tors argued, was the hub of the con-
spiracy, providing a place to laun-
der drug proceeds and a pretense
for all the coded telephone talk of
"tickets" and "music" — allegedly
term for drugs.

But "tickets" and "music" can
also mean just that, A. Eduardo Ba-
...defense attorney,
...Holland
...Jackson, Hurston and others were
business-related and not...part of
any criminal conspiracy.

"My client ran a legitimate
nightclub, a successful nightclub,"
Barreno said in an interview. "He
was a businessman, and the gov-
ernment quite frankly tried to
make hay where there wasn't any."

A music promoter, Holland re-
cently said that his ties to Jones
were legitimate business dealings
and that his past is in the past.
Prosecutors are trying to lock him
up again, this time as a probation
violator — using the same set of
acts already considered by the
jury.

At least six people have pleaded
guilty in the case, including two
who testified for the prosecution.
But Jones was the biggest target.
He is to be retried on the remain-
ing charges in November. Three



Prosecutors presented evidence of cocaine seized in a raid in U.S. District
Court, but jury... ...to convict the suspects.



Cash seized in 2005 was also introduced in evidence, ...more than $61,000 was found in a safe...
found at a stash house, and more than $61,000 was found in a safe.

idence that the prosecutors, Assis-
tant U.S. Attorneys Rachel Carlson
Lieber and John V. Geise, argued
reflect the unmistakable actions of
a drug trafficker, checking on in-
coming shipments, arranging drop-
offs and collecting payments.

In one call to Jones from a cell-
phone registered to a man in McAl-
len, the subject is music, ostensibly
related to the nightlife business.

Jones is told that the caller is try-
ing to find "some new music" but
that it is getting a little rough, ac-
cording to court papers in the case.

caller that he is satisfied with the
music he's received so far, that
"they love the sound, they love the
entertainers, they love it," the pa-
pers stated.

Norris suggested that by putting
everyone into the same pot with
Jones and charging them all with
conspiracy, the government over-
reached and undermined its case.

"I think they really thought that
evidence was going to carry the
day," Norris said. But in the end
there was very little evidence
against the three co-defendants.

The Re

## CRIME

# Cash and Cocaine, but No Co[...]

## Jurors, Lawyers Reflect on Where Case Prosecuting District's Larg[...]

By HENRI E. CAUVIN
*Washington Post Staff Writer*

The haul was unprecedented. A wiretap on the cellphone of a reputed drug kingpin led police to a stash house where they found almost 100 kilos of cocaine and nearly $1 million. A force of more than 100 federal and local agents swept up nearly a dozen suspects in raids across the region.

The evidence to put everyone away seemed strong. There were the drugs, the cash and the wiretaps, filled with curious talk of "tickets" — "little tickets," "VIP tickets" — code, prosecutors said, for wholesale quantities of cocaine.

And there was the Global Positioning System device, secretly planted in the suspected kingpin's car, tracking his comings and goings between the stash house in Fort Washington and his supposed customers in and around Washington.

Then the case went before a jury in U.S. District Court. The outcome was hardly what authorities would have expected on that October morning a year and a half ago when they found themselves staring at the biggest seizure ever made in a D.C. drug investigation.

The jurors, after deliberating for weeks, deadlocked earlier this year on many charges against alleged kingpin Antoine Jones, including the most serious: conspiracy. And on more than a dozen other counts, the jury came back with verdicts of not guilty. The three men on trial with him, charged with conspiracy as well, fared even better.

Kevin L. Holland and Adrian Jackson were acquitted of all charges; Michael A. Huggins was acquitted of all but one lesser charge, and that eventually was dismissed by the government. All three men, jailed for more than a year pending trial, are now free. Jones remains in jail, awaiting retrial.

It was a stunning loss for prosecutors and police, who claimed they had busted a major drug-trafficking ring with direct links to

against other such enterprises, this one did not allege that anyone was killed or even assaulted by Jones or his alleged co-conspirators. Although the absence of violence was a relief for investigators, it also could have had consequences with the jury, lawyers said.

"If there's [...] in the case, it kind of spread out the [...]," said Jon [...] Norris, [...] [...]ittal [...] in [...] there's not [...] the jury can [...] uate the evidence [...] son [...] as they're supposed [...]

Nothing in the law requires prosecutors to present evidence of violence to prove a conspiracy to distribute narcotics. And whether the lack of bodies was pivotal in this case is a question that veteran prosecutors debate.

But experience tells many prosecutors that a body, or two or three, can make juries more apt to tie defendants together in a conspiracy and return verdicts in which everyone shares blame.

Without the sort of violence people have come to expect from major drug gangs, a case such as the one against Jones can seem more like an elaborate financial crime, lawyers say. A jury may see a lot of money and perhaps a bit of greed, but it doesn't see any [...] perhaps doesn't feel [...] And that could sway a [...]

Before they were convicted in 2003 of murder, racketeering and other offenses, Kevin Gray and Rodney Moore, two of the biggest players in the District's drug trade, left a long trail of blood that ultimately landed them in prison for the rest of their lives.

"Everything that I had was somehow connected to drug violence," said Timothy J. Heaphy, the lead prosecutor in the trial of Gray, who was convicted of 19 murders, and Moore, who was convicted of 10.

Prosecutors faced other obstacles in Jones's case. Although all four defendants had previous drug convictions, in this case none of them was caught with or near especially large quantities of cocaine,

## The Federal Ca[...]

Federal prosecutors a[...] Antoine Jones of fron[...] major cocaine ring fr[...] now-closed nightclub [...] owned in the District.



house. It wasn't eno[...] [...] all but th[...] [...] [...] [...] they [...] [...] [...] [...] in [...] not that she was[...] some of what she [...] she just wasn't [...] times it was a lit[...] it wasn't really [...]

She and another [...] Jones was never [...] es[...] tering or leaving [...] which was sec[...] for investigators to [...] what jurors got was[...] of Jones's Jeep out[...] which he did not [...] and the data from [...] device which placed the vehicle in the immediate area of the house.

When police arrested Jones at his home in W[...] they found more than $60,000 in the Jeep [...] money prosecutors argued was surely the profits of a drug en[...]

## washingtonpost.com

# District Jurors Deserve More Credit

Monday, March 12, 2007; A12

The March 5 Metro story "Cash and Cocaine, but No Conviction," regarding the trial of Antoine Jones and four co-defendants in U.S. District Court, insulted the integrity of those who serve as jurors in the District of Columbia.

The article extensively quoted Mr. Jones's defense attorney, particularly his theory that the Jones case was less serious in the eyes of jurors because it was not alleged that the defendants committed acts of violence. The article does not include an alternate view -- that the Jones case is an anomalous result, not symptomatic of a community trend toward tolerating drug conspiracies that do not involve violence.

Juries in the District can and usually do convict defendants charged with drug conspiracy, even without attendant violence. To suggest otherwise implicitly slanders the people who perform jury duty, as it suggests that jurors ignore instructions to decide criminal cases based on evidence, rather than emotion. It also suggests that drug distribution is a victimless crime, which is grossly inaccurate. The sale of drugs motivates a large percentage of the property and violent crime committed in the District.

The article mentioned my involvement in a racketeering prosecution in the District some years ago -- *United States v. Kevin Gray, et al.* The characterization of the Gray case as mine alone ignored contributions by the two other veteran prosecutors and a large team of law enforcement personnel. The success of that case was due to the hard work of that entire team.

TIMOTHY J. HEAPHY

Charlottesville

*The writer was an assistant U.S. attorney in Washington from 1994 to 2003.*

© 2007 The Washington Post Company



Before Hydroderm™

After Hydroderm™

Actual photos. Individual results will vary.

Prefer a BOTOX Alternative?

[ Try It Free* ▼ ] Go

Hydroderm serum delivers full collagen molecules to the skin, a feat once possible only by injection.

# washingtonpost.com

# The Facts in a Criminal Case

Friday, March 16, 2007; A20

Regarding Timothy J. Heaphy's March 12 letter, which commented on the March 5 Metro article "Cash and Cocaine, but No Conviction" and the recent federal conspiracy trial of my client Antoine Jones and his co-defendants:

Mr. Heaphy was wrong in saying that Mr. Jones was tried with four co-defendants; there were three.

He misstated the facts when he said that I was "extensively quoted" and that I had posited a theory that the "case was less serious in the eyes of jurors because it was not alleged that the defendants committed acts of violence." I said no such thing.

That "theory" was advanced by another defense attorney, and I intentionally limited my comments to The Post because Mr. Jones's case is ongoing.

It is inexcusable for Mr. Heaphy to misconstrue the facts and then suggest that I somehow insulted the jury's integrity, suggested that drug distribution is a victimless crime or suggested that jurors ignore instructions from the court.

A. EDUARDO BALAREZO

Washington

*The writer is defense counsel for Antoine Jones.*

© 2007 The Washington Post Company



Advertisement

*I want a*
$820,000
*Mortgage for Under*
$1,998 /Month!

**Think You Pay Too Much For Your Mortgage?**

Calculate New Payment!

**Click Your State**
Alabama

**Click Your Rate**
3.00% - 3.99%

**Click Credit Type**
Good

LowerMyBills.com

Case 1:05-cr-01300-RJL   Document 1-...   Filed 07/.../07   Page 81 of 86



# ...a with drug convictions given liquor license

## ...SSONS
### one can memorize, learning is a lifetime

THE WASHINGTON TIMES

...obin Robison can have a conversation with her husband without saying a word. They ...

## Northeast club called front for multimillion-dollar cocaine business

WJLA-TV Channel 8
Antoine Jones had been convicted of dealing cocaine in Arlington when he got an alcohol-beverage license in the District

## VIRGINIA
### Already the larges...

...for Open Government, says the ability ...ally gives teeth to Virginia's Freedom o... ...to award attorney's fees to victorious plain... ...mation Act enforcement.

Virginia lawmakers strengthened the ...

see SUNSHINE, page B2

...okes had spent most of the past ...sen for dealing cocaine when he ap-
...) government for an alcohol-bev-
...2004.
...ict nonetheless awarded Jones a li-
...ing him to open the Club Level's on-
...enue in Northeast, a popular night-
...horities say was really a front for a
...-dollar cocaine-dealing network with
...and Mexico.
...was arrested and charged in 2005
...fficking and other felony charges. A
...) reach a verdict in January, and he ...



...in prison if convicted.
D.C. officials acknowledge that when Jones ...plied for the license they were unaware of ...criminal history, which an FBI agent in a 2... ...wiretap affidavit called "extensive."
"Mr. Jones answered on the application tha... ...didn't have any convictions," said Maria Dela... ...executive director of the District Alcoholic ...erage Regulation Administration (ABRA). "I... ...we known about the conviction, he would not h... ...received a license."
One reason Jones' criminal past went un... ...tected is that D.C. applicants are required to ...tain police clearance only in the District and ...state in which they live.

see CLUB, page B2



Daniel Rosenbaum/The Washington Times

Authorities say Club Level's on Montana Avenue in Northeast was opened as a front for a multimillion-dollar cocaine-dealing network with ties to Texas and Mexico. The back windows of the building overlook the police department's 5th District headquarters.

# CLUB

*From page B1*

In the case of Jones, a Maryland resident, officials missed his 1991 conviction for cocaine dealing in Arlington, which resulted in a six-year prison sentence with three years suspended.

Court records also show Jones was arrested in 1993 in the District on drug-related charges, and while out on bail was arrested again for possession of more than 600 grams of cocaine. In 1994, he pleaded guilty in the case and was sentenced to 10 years, according to court records. That conviction was then sealed.

On Jones' application packet, reviewed by The Washington Times, ABRA employee Jolly Harper indicated that the District obtained a police clearance for Jones.

However, a sealed conviction would not appear in a criminal-background search, said Lt. William O'Connor, of the Metropolitan Police Department's records branch.

He also confirmed the board's policy is to check only records for the District and the applicant's home state, so Jones would have receive clearance despite his Virginia conviction.

The U.S. attorney's office declined to comment on why Jones' records were sealed in the 1994 case.

An ABRA official said the agency once required applicants to submit fingerprints, which

tinued in the early 1990s.

Miss Delaney said the agency is attempting to make changes to avoid a similar occurrence, but no changes have been made since ABRA learned about the Jones case about 18 months ago.

She said the agency could enter into an agreement with a law-enforcement agency to conduct nationwide searches of criminal records for liquor applicants.

For now, the District still must rely, in part, on an applicant's truthfulness, Miss Delaney said.

"If there was a felony conviction, he should have told us about it," she said.

Community activist Kathy Henderson, a former neighborhood advisory commissioner in Ward 5, said the District "can't rely on a criminal to self-report" his or her criminal history.

"This clearly never should have happened," she said. "A mistake was made. Somebody needs to take ownership of the mistake. People

Other community leaders in Ward 5, home to Club Level's, also are upset.

"If you have a person who has a demonstrated track record of being involved in these acts and you grant them a license, that's ridiculous," said Jean Mason, president of the Arboretum Neighborhood Association.

With its back windows overlooking the police department's 5th District headquarters, the nightclub appears a brazen place to oversee a major drug operation.

But for more than a year, authorities say, the converted warehouse provided enough cover for the illegal business to thrive, complete with its own language.

The wiretap on Jones' cell phone recorded conversations about "VIPs," "tickets" and "half-tickets" — a coded language that investigators said referred to various amounts of cocaine.

"To a person that's just listening, the average person just thinks

witness testified in court.

"We talked about things th surround the nightclub th wouldn't raise suspicion to a one," he said.

Jones' attorney, A. Eduar Balarezo, said his client wasn't operating a drug ring out of club.

"This case is based mostly on interpretations of what it c 'coded' telephone [calls] allege involving Mr. Jones, and the use informants and other individu with motives to testify in favo the government and against Jones," he said in court.

But prosecutors say the c was where Jones arranged th deals worth as much as $100,0 and laundered the proceeds.

There is no indication t Jones ran other nightclubs, bu had a major financial stake Kili's Kafe & Lounge in No west, which went bankrupt 2005 and eventually closed a shootings and other violence, cording to court records.

Jones and a business part loaned Kili's owners more th $70,000 to help the business re its tax debt in exchange for p centage of the bar revenue a admissions, according to ba ruptcy records.

Jones did not testify in his t last year, in which two co-def dants were acquitted and a j deadlocked on most of charges he faces.

But in pretrial hearing, he nied wrongdoing.

"If you look at my record, not violent," he told a judge

## AGENT'S FINDING

An FBI agent in a 2005 wiretap application said a criminal investigation showed that Antoine Jones was using his nightclub to deal drugs and launder drug money. He obtained a liquor license despite a lengthy criminal past.

15. ANTOINE JONES is the sole proprietor of a nightclub named "LEVELS," which is located at 1960 Montana Avenue, N.E., Washington, D.C. Investigators believe that ANTOINE JONES uses his business as a location where he can conduct his drug trafficking activities, as well as launder drug trafficking proceeds.

Source: U.S. District Court

The Washington Times

# The Washington Times

**www.washingtontimes.com**

## Man with drug convictions given liquor license

By Jim McElhatton
THE WASHINGTON TIMES
Published March 12, 2007

Antoine Jones had spent most of the past decade in prison for dealing cocaine when he applied to the D.C. government for an alcohol-beverage license in 2004.

The District nonetheless awarded Jones a license, allowing him to open the Club Level's on Montana Avenue in Northeast, a popular nightclub that authorities say was really a front for a multimillion-dollar cocaine-dealing network with ties to Texas and Mexico.

Jones, 47, was arrested and charged in 2005 with drug trafficking and other felony charges. A jury failed to reach a verdict in January, and he now awaits a second trial that could result in life in prison if convicted.

Advertisement

Ads by Goooooogle                    Advertise on this site

**Onyx On First**
New Urban Condos in Washington DC in the new Ballpark District
www.onyxonfirst.com/

**Car Washington DC**
Find great deals on a Car at your local DC Mazda Dealer!
MazdaUSA.com

D.C. officials acknowledge that when Jones applied for the license they were unaware of his criminal history, which an FBI agent in a 2005 wiretap affidavit called "extensive."

"Mr. Jones answered on the application that he did not have any convictions," said Maria Delaney, executive director of the District's Alcoholic Beverage Regulation Administration (ABRA). "Had we known about the conviction, he would not have received a license."

One reason Jones' criminal past went undetected is that D.C. applicants are required to obtain police clearance only in the District and the state in which they live.

In the case of Jones, a Maryland resident, officials missed his 1991 conviction for cocaine dealing in Arlington, which resulted in a six-year prison sentence with three years suspended.

Court records also show Jones was arrested in 1993 in the District on drug-related charges, and while out on bail was arrested again for possession of more than 600 grams of cocaine. In 1994, he pleaded guilty in the case and was sentenced to 10 years, according to court records. That conviction was then sealed.

On Jones' application packet, reviewed by The Washington Times, ABRA employee Jolly Harper indicated that the District obtained a police clearance for Jones.

However, a sealed conviction would not appear in a criminal-background search, said Lt. William O'Conner, of the Metropolitan Police Department's records branch.

He also confirmed the board's policy is to check only records for the District and the applicant's home state, so Jones would have receive clearance despite his Virginia

conviction.

The U.S. attorney's office declined to comment on why Jones' records were sealed in the 1994 case.

An ABRA official said the agency once required applicants to submit fingerprints, which were then run through an FBI check, but the policy was discontinued in the early 1990s.

Miss Delaney said the agency is attempting to make changes to avoid a similar occurrence, but no changes have been made since ABRA learned about the Jones case about 18 months ago.

She said the agency could enter into an agreement with a law-enforcement agency to conduct nationwide searches of criminal records for liquor applicants.

For now, the District still must rely, in part, on an applicant's truthfulness, Miss Delaney said.

"If there was a felony conviction, he should have told us about it," she said.

Community activist Kathy Henderson, a former neighborhood advisory commissioner in Ward 5, said the District "can't rely on a criminal to self-report" his or her criminal history.

"This clearly never should have happened," she said. "A mistake was made. Somebody needs to take ownership of the mistake. People with these types of records shouldn't be given a liquor license."

Other community leaders in Ward 5, home to Club Level's, also are upset.

"If you have a person who has a demonstrated track record of being involved in these acts and you grant them a license, that's ridiculous," said Jean Mason, president of the Arboretum Neighborhood Association.

With its back windows overlooking the police department's 5th District headquarters, the nightclub appears a brazen place to oversee a major drug operation.

But for more than a year, authorities say, the converted warehouse provided enough cover for the illegal business to thrive, complete with its own language.

The wiretap on Jones' cell phone recorded conversations about "VIPs," "tickets" and "half-tickets" -- a coded language that investigators said referred to various amounts of cocaine.

"To a person that's just listening, the average person just thinks we were talking about selling legitimate tickets," a cooperating witness testified in court.

"We talked about things that surround the nightclub that wouldn't raise suspicion to anyone," he said.

Jones' attorney, A. Eduardo Balarezo, said his client wasn't operating a drug ring out of the club.

"This case is based mostly on the interpretations of what it calls 'coded' telephone [calls] allegedly involving Mr. Jones, and the use of informants and other individuals with motives to testify in favor of the government and against Mr. Jones," he said in court.

But prosecutors say the club was where Jones arranged drug deals worth as much as $100,000 and laundered the proceeds.

There is no indication that Jones ran other nightclubs, but he had a major financial stake in Kili's Kafe & Lounge in Northwest, which went bankrupt in 2005 and eventually closed after shootings and other violence, according to court records.

Jones and a business partner loaned Kili's owners more than $70,000 to help the business erase its tax debt in exchange for percentage of the bar revenue and admissions, according to bankruptcy records.

Jones did not testify in his trial last year, in which two co-defendants were acquitted and a jury deadlocked on most of the charges he faces.

But in pretrial hearing, he denied wrongdoing.

"If you look at my record, I'm not violent," he told a judge. "I would not do anything that would send me to hell."

Copyright © 2007 News World Communications, Inc. All rights reserved.

### Return to the article



Want to use this article? Click here for options!
Copyright The Washington Times valeoip beacon

# The Washington Times

## www.washingtontimes.com

# Fenty wants strict checks for liquor licenses

By Jim McElhatton
THE WASHINGTON TIMES
Published March 15, 2007

D.C. Mayor Adrian M. Fenty is calling for tougher scrutiny of liquor-license applicants after a convicted drug felon won a permit to open a nightclub that authorities later said was a front for a multimillion-dollar cocaine ring.

Advertisement

Ads by Goooooogle                    Advertise on this site

Art Institutes - Fashion
Fashion School Design Degrees from Art Institutes - 36
US/CA locations
Fashion.Education.org

Washington Dc Dating
It's Just Lunch Dating Service for Local professionals & busy
singles
www.ItsJustLunchWashington.com

Craigslist Washington Dc
Buy or sell almost anything. Find Washington DC buyers &
sellers—free
www.LiveDeal.com

Chris Laich
This critically acclaimed Elegant Wedding DJ Service is
leading..
www.chrislaich.com

"In this case it looks like there's a need for a more stringent law, and we'll do that expeditiously," said Mr. Fenty, a Democrat.

The Washington Times reported Monday that Antoine Jones was granted a liquor license in 2004 to open Club Level's on Montana Avenue in Northeast, though he had served the better part of the past decade for dealing cocaine.

Jones had convictions on his record in Virginia and the District when he was awarded the license. A year after opening the club, he was arrested on charges of running the drug ring. After a mistrial earlier this year, Jones will be tried again in November and faces life in prison if convicted.

City officials said the convictions never surfaced for two reasons. First, the city's policy for liquor-license reviews is to require criminal checks in the District and the state in which an applicant lives. So for Jones, a Maryland resident, his 1991 cocaine conviction in Arlington never surfaced.

Also, Jones was sentenced to 10 years prison in a federal cocaine case in the District in 1994, but the conviction remains sealed. Because the conviction was sealed, it never surfaced during a check of his background.

The District's Alcohol Beverage Regulation Administration's director, Maria Delaney, said officials are moving toward a system that will include a nationwide check of criminal records.

"I'm glad the director is moving in a direction so that we'll make sure the

liquor-license application process protects the citizens of the District of Columbia," Mr. Fenty said.

The mayor's comments came after a Arboretum Neighborhood Association meeting Tuesday night at the Metropolitan Police Department's 5th District headquarters, which is within walking distance of Club Level's.

The club closed after an FBI raid in 2005. Some community leaders have expressed concern that Jones was able to get a liquor license. Jean Mason, president of the Arboretum association, has called it "ridiculous" that the District awarded the license.

D.C. Council member Harry Thomas Jr., Ward 5 Democrat, said the District should have a mandatory, nationwide search of criminal records before awarding liquor licenses.

"We need to be very stringent," he said. "We need responsible people running these nightclubs. I'm very concerned about how liquor licenses are handed out."

For more than a year, authorities say, the converted warehouse that was Club Level's provided enough cover for the illegal business to thrive, complete with its own language.

The wiretap on Jones' cell phone recorded conversations about "VIPs," "tickets" and "half-tickets" -- a coded language that investigators said referred to amounts of cocaine.

Prosecutors say the club was where Jones arranged drug deals worth as much as $100,000 and laundered the proceeds.

But Jones' attorney, A. Eduardo Balarezo, said his client wasn't operating a drug ring out of the club. He said Jones maintains his innocence.

"This case is based mostly on the interpretations of what it calls 'coded' telephone [calls] allegedly involving Mr. Jones, and the use of informants and other individuals with motives to testify in favor of the government and against Mr. Jones," he said in court.

Copyright © 2007 News World Communications, Inc. All rights reserved.

**Return to the article**

 Want to use this article? Click here for options!
Copyright The Washington Times valeoip beacon

# The Washington Times

## www.washingtontimes.com

## Correction

Published March 15, 2007

The Washington Times in Monday's editions ran a photograph of the wrong man with the story on the front page of the Metropolitan section headlined "Man with drug convictions given liquor license." The Antoine Jones who had spent several years in prison for dealing cocaine before receiving an alcohol-beverage license from the District is shown here.

Advertisement

Ads by Google        Advertise on this site

**Russia, China and India**
Growing in International Influence Is a New Power block Emerging?
www.realtruth.org/RussiaChinaIndia

**Anti-Americanism**
What are the real roots of anti-Americanism? Read more.
www.cfr.org

**The Next Oil Boom**
Investing in the oil reserve 8 times bigger than Saudi Arabia's
www.investmentu.com

**Coffee Exposed**
A shocking secret coffee co's don't want you to know
www.coffeefool.com

Copyright © 2007 News World Communications, Inc. All rights reserved.

### Return to the article

 Want to use this article? Click here for options!
Copyright The Washington Times valeoip beacon



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**ALCOHOLIC BEVERAGE REGULATION ADMINISTRATION**

# INSTRUCTIONS FOR FILING APPLICATION FOR ALCOHOLIC BEVERAGE CONTROL (ABC) LICENSE APPLICATION

The following instructions are intended for retail and wholesale applicants who are applying for an Alcoholic Beverage Control (ABC) license. Please note that based on the 60 - day placard period and subsequent investigation, a routine application, with no protests, will take approximately 12 weeks for approval. You must call an ABC Licensing Specialist to schedule an appointment for the submission of your application. **Applications will only be accepted when ALL the information is provided. To schedule an appointment call (202) 442-4423 between the hours of 8:30 a.m. and 4:15 p.m., Monday through Friday.**

**The applications must be signed by the following:**

1. if the applicant is a sole proprietor, the individual must sign.
2. if the applicant is a partnership, all partners must sign and submit a copy of the partnership agreement.
3. if the applicant is a corporation, the President or Vice President must sign. Certified Articles of Incorporation and Certificate of Good Standing must be provided. These documents may be obtained from the Department of Consumer and Regulatory Affairs, (DCRA) Corporation Division. Also, minutes of the Board of Director's meeting verifying the election of the officers and a copy of stock certificates must be submitted.
4. if the applicant is an LLC, the managing member(s) must sign. The Articles of Organization, the Operating Agreement, Certified Articles of Incorporation and Certificate of Good Standing must be submitted. These documents may be obtained from the DCRA, Corporation Division.
5. if the applicant is a Limited Partnership, the general partner(s) must sign. If the general partner is a corporation, the Articles of Organization, Certified Articles of Incorporation and Certificate of Good Standing must be submitted. These documents may be obtained from the DCRA, Corporation Division. Also, minutes of the Board of Director's meeting verifying the election of the officers and a copy of stock certificates must be submitted.

## GUIDELINES FOR REQUESTING A STIPULATED LICENSE:

A Stipulated License is issued by the ABC Board to allow the applicant to sell and serve alcoholic beverages on the premise during the interim of the application process and approval. Only Class "C" and "D" may apply for the Stipulated License. The following written correspondence must be submitted to the ABC Board:

1. The applicant must submit a written request for a stipulated license. The request must include the applicant's name, trade name, and address of the premise.
2. The applicant must submit written correspondence from the Advisory Neighborhood Commission (ANC) where the Applicant is located. The letter should include the ANC's vote with a quorum present, not objecting to the issuance of a stipulated license prior to the completion of the notice period. The placard period is sixty (60) days, which includes a forty five (45) day period for community objections. The Chairperson of the Advisory Neighborhood Commission must sign this correspondence.

## General instructions

1. All persons applying for an ABC License must be 21 years of age.
2. Applications must be submitted in person. Please bring government issued identification with you.
3. Please note the term "APPLICANT" as used in this application designates the person in whose name the license will be issued if the application is approved.
4. All applicants must obtain a police clearance from the District of Columbia's Metropolitan Police Department, located at 300 Indiana Ave., NW, Room 3058, Washington, DC 20001, Monday through Friday, between the hours 9:00 a.m. to 3:00 p.m. In addition, a police clearance for your current residence and from each state in which you have resided in the past five (5) years.
5. All persons with a misdemeanor conviction during the last five (5) years or felony conviction during the last ten (10) years must submit a copy of the court disposition.
6. Application forms must be notarized where applicable.

★ ★★ 
**GOVERNMENT**
**OF THE**
**DISTRICT OF COLUMBIA**

**ALCOHOLIC BEVERAGE REGULATION ADMINISTRATION**
**ALCOHOLIC BEVERAGE CONTROL BOARD**
941 North Capitol Street, NE, Suite 7200
Washington, DC 20002

ABRA 2004

| APPLICATION NUMBER | 60860 | LICENSE NUMBER | 71484 | LICENSE CLASS | Retailer CN 03 |
|---|---|---|---|---|---|

Antoine Jones
Levels Entertainment
1960 MONTANA AVE NE,
WASHINGTON , DC 20018

**Layout and Endorsements:**
1st Floor On-site Storage
2nd Floor On-site Storage

**Voluntary Agreement: No**

| LICENSE IS VALID FROM 11/19/2004 TO 9/30/2006 | ISSUE DATE: 11/19/2004 |
|---|---|

**THE LAW REQUIRES THIS LICENSE TO BE POSTED IN A CONSPICUOUS PLACE ON THE PREMISES**

---

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER AND A MICRO PRINT LINE

★ ★ ★

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

OFFICE OF TAX AND REVENUE

*Sales & Use Tax*

**CERTIFICATE OF REGISTRATION**
ISSUED PURSUANT TO DISTRICT OF COLUMBIA SALES AND USE TAX ACTS

THIS CERTIFIES THAT

FR-660 (REV. 4/01)

JONES ANTOINE
LEVELS ENTERTAINMENT
1960 MONTANA AVE NE
WASHINGTON        DC   20002

| CERTIFICATE NUMBER | DATE ISSUED |
|---|---|
| 350000053968 | 08/20/04 |
| REFER TO THIS NUMBER WHEN REPORTING SALES TAX | |

THIS CERTIFICATE IS NONTRANSFERABLE

Is hereby authorized and empowered to collect reimbursement for the
District of Columbia Sales and Use Taxes.

Deputy Chief Financial Officer,
Philip G. Brand

**THIS CERTIFICATE MUST BE POSTED IN A CONSPICUOUS PLACE**

SW-00123
SW-00123